**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DAWN WILLIAMS** | ) | |
| **o/b/o B.B., A Minor Child** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:12CV5 LMB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

This is a proceeding under 42 U.S.C. § 405(g) for judicial review of the defendant's final decision denying Dawn Williams' application for Supplemental Security Income benefits on behalf of her son, B.B. ("Plaintiff"), under Title XVI of the Social Security Act.  This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).  Plaintiff has filed a Brief in Support of Complaint (Document Number 15), and defendant has filed a Brief in Support of the Answer (Doc. No. 18).

**Procedural History**

Ms. Williams filed an application for Supplemental Security Income (SSI) benefits on behalf of plaintiff on July 15, 2009, alleging an onset of disability date of November 15, 2003. (Tr. 106-08).  The application was denied initially and, following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated

September 23, 2010.  (Tr. 58-62, 10-26).  Ms. Williams thereafter filed a request for review with

the Appeals Council of the Social Security Administration (SSA).  (Tr. 6).  The Appeals Council

denied Ms. Williams' request for review on November 22, 2011, after considering additional

evidence.  (Tr. 1-4).  Thus, the decision of the ALJ stands as the final decision of the

Commissioner.  See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A.   ALJ Hearing

Plaintiff's administrative hearing was held on September 10, 2010.  (Tr. 29).  Plaintiff was

present and was represented by counsel.  (Id.).  Ms. Williams was also present.  (Id.).

Plaintiff's attorney examined plaintiff, who testified that he was thirteen years of age, and

was in seventh grade.  (Tr. 30).  Plaintiff stated that he rides the bus to school.  (Id.).  Plaintiff

testified that he was kicked off the bus the previous school year.  (Id.).

Plaintiff stated that he was often tardy the previous school year.  (Tr. 31).  Plaintiff

testified that he had doctor appointments every two weeks.  (Id.).

Plaintiff stated that he takes Vyvanse[1] for his attention deficit hyperactivity disorder

("ADHD").  (Tr. 32).  Plaintiff testified that he "sometimes" remembers to take his medication.

(Id.).  Plaintiff stated that, when he forgets to take his medication, he becomes "really hyper and

fidgety."  (Id.).  Plaintiff testified that he is energetic and is always moving when he does not take

his medication.  (Id.).  Plaintiff stated that he does not pay attention as well when he does not take

his medication.  (Id.).  Plaintiff testified that he did not take his medication the day of the hearing,

---

[1]Vyvanse is a stimulant indicated for the treatment of ADHD.  See Physician's Desk
Reference (PDR), 3033 (63rd Ed. 2009).

and that he was unable to sit still.  (Id.).

Plaintiff stated that, when he takes his medication, his is "kind of calm," is able to sit still, and is not so fidgety.  (Tr. 33).  Plaintiff testified that he is able to concentrate when he takes his medication.  (Id.).  Plaintiff stated that he does not take his medication because he forgets, his mother forgets, and he does not like taking it.  (Id.).

Plaintiff testified that it is really difficult to sit at school when he is not on his medication. (Id.).  Plaintiff stated that it is difficult to listen to directions, and pay attention to teachers.  (Id.). Plaintiff testified that, when he is on medication, he fidgets a little at school, but it is not bad. (Id.).

Plaintiff stated that he has not had difficulty remembering to turn in homework this school year, although he had problems turning in his homework the prior school year.  (Tr. 34).  Plaintiff testified that, the prior school year, he did not complete his homework because he had difficulty understanding the material.  (Id.).

Plaintiff stated that he had only been in school for two weeks, but he felt "pretty good" about his grades.  (Tr. 35).  Plaintiff testified that his grades the previous school year were "bad" because he had difficulty understanding the material.  (Id.).  Plaintiff stated that he also had problems at school with fighting.  (Id.).  Plaintiff testified that he had not been in any fights the current school year.  (Id.).

Plaintiff stated that he had friends his age at school.  (Id.).  Plaintiff named one friend he described as his "number one friend," and indicated that he had some other friends as well.  (Tr. 36).  Plaintiff testified that he sometimes gets in fights with his friends.  (Id.).

- 3 -

Plaintiff stated that he has no difficulty falling asleep, although he sometimes has problems staying asleep.  (Id.).  Plaintiff testified that he wakes up three to four times a night, although he is not up long when this occurs.  (Id.).  Plaintiff stated that he goes to his bedroom at 8:00 or 9:00 p.m., but does not fall asleep until 10:00 or 11:00 p.m.  (Tr. 37).  Plaintiff testified that it takes him one to two hours to fall asleep.  (Id.).

Plaintiff stated that he has four younger siblings.  (Id.).  Plaintiff testified that he "sometimes" gets along with his siblings.  (Id.).  Plaintiff stated that he has problems with his siblings once or twice a week.  (Id.).  Plaintiff testified that his siblings aggravate him, and that he has gotten physical with them before.  (Tr. 38).  Plaintiff stated that he gets in trouble when he has physical altercations with his siblings.  (Id.).  Plaintiff testified that he has argued with his mother about his punishment in the past, but he no longer argues.  (Id.).

Plaintiff stated that he takes his medication in the morning when he wakes, and that it feels like his medications stop working right when school ends.  (Tr. 39).  Plaintiff testified that he plays video games when he gets home, so he is constantly moving his hands.  (Id.).

Plaintiff's attorney next examined Ms. Williams, who testified that she lives in a trailer with her husband and her four children.  (Tr. 40).  Ms. Williams stated that the family moved frequently due to financial and other issues, and that plaintiff changed schools often.  (Id.).  Ms. Williams testified that plaintiff did not react well to changing schools, and that he usually got in fights or did not pay attention when he started a new school.  (Tr. 41).  Ms. Williams stated that plaintiff's grades usually dropped after the family moved.  (Id.).

Ms. Williams testified that, when plaintiff is not in school, he is either with his aunt or

- 4 -

grandmother, although he has stayed alone for short periods.  (Id.).  Ms. Williams stated that she does not leave plaintiff alone for long periods because she is afraid he will try to cook and catch the house on fire, or do something else he is not supposed to do.  (Id.).

Ms. Williams testified that plaintiff has been diagnosed with ADHD.  (Id.).  Ms. Williams stated that plaintiff's doctors think he might have bipolar disorder, but they indicated that he was too young to diagnose him.  (Tr. 42).  Ms. Williams testified that plaintiff's doctors suspect bipolar disorder because plaintiff is easily frustrated, and experiences mood swings.  (Id.).

Ms. Williams stated that plaintiff has taken Vyvanse, Adderall,[2] Concerta,[3] and Focalin.[4] (Id.).  Ms. Williams testified that plaintiff's medications were changed often because his medications eventually stop working.  (Id.).  Ms. Williams stated that a medication will typically work for six months to two years, and then stop working.  (Id.).  Ms. Williams testified that she can tell a medication is not working because plaintiff is unable to focus or pay attention in school. (Tr. 43).

Ms. Williams stated that plaintiff sees a psychiatrist every three months for medication refills, and he sees a counselor, Dee Moore, on a monthly basis.  (Id.).  Ms. Williams testified that Ms. Moore is a counselor outside of the school.  (Id.).  Ms. Williams stated that plaintiff last saw Ms. Moore the month prior to the hearing.  (Id.).

Ms. Williams testified that on plaintiff's last visit with Ms. Moore, they discussed

---

[2]Adderall is indicated for the treatment of ADHD.  See PDR at 3013.

[3]Concerta is a stimulant indicated for the treatment of ADHD.  See PDR at 1925.

[4]Focalin is indicated for the treatment of ADHD.  See PDR at 2252.

plaintiff's sexually inappropriate activity.  (Tr. 45).  Ms. Williams explained that plaintiff has

"fondl[ed] himself" in public places, and that this was a problem the previous school year.  (Id.).

Ms. Williams testified that plaintiff was given an in-school suspension that prior school year due

to his sexual activity.  (Id.).  Ms. Williams stated that plaintiff has had one incident involving

sexually inappropriate activity this school year.  (Id.).

 Ms. Williams testified that plaintiff has alternated between schools in Hanibal and schools

in Macon because the family has moved frequently. (Tr. 47-48).  Ms. Williams stated that she had

recently purchased a trailer and did not expect to move again.  (Tr. 48).

 Ms. Williams testified that it is difficult for plaintiff to change activities, and that she has to

give plaintiff three to five minutes to adjust to a different task.  (Id.).  Ms. Williams stated that

plaintiff gets upset when he is asked to change tasks.  (Tr. 49).  Ms. Williams testified that

plaintiff has had difficulty changing subjects at school.  (Id.).

 Ms. Williams stated that plaintiff has conflicts with his younger siblings two to three times

a week.  (Id.).  Ms. Williams testified that plaintiff argues with his siblings, and that he has

pushed, hit, and shaken them before.  (Id.).  Ms. Williams stated that plaintiff does not usually get

upset after hurting his siblings until he his punished.  (Tr. 50).

 Ms. Williams testified that, when plaintiff gets home from school, he has to do his

homework and chores.  (Id.).  Ms. Williams stated that she has to check plaintiff's homework

because he has a tendency to say it is finished when it is not complete.  (Id.).  Ms. Williams

testified that, the previous school year, plaintiff's teachers indicated that they did not receive

plaintiff's homework even though plaintiff completed the assignments.  (Id.).

Ms. Williams stated that, when plaintiff gets home from school, he is very agitated and does not want anyone to bother him.  (Id.).  Ms. Williams testified that plaintiff does pretty well until 3:30 or 4:00 p.m., at which time he becomes irritable and hyper.  (Tr. 51).  Ms. Williams stated that she has reported this to plaintiff's psychiatrist.  (Id.).

Ms. Williams testified that plaintiff's bedtime is 8:00 p.m.  (Id.).  Ms. Williams stated that at around 7:00 p.m., she tries to calm plaintiff down to prepare him for bedtime.  (Tr. 52).  Ms. Williams testified that plaintiff is not usually asleep until 10:00 or 11:00 p.m.  (Id.).  Ms. Williams stated that, in the winter, plaintiff stays up later because he is not outside as much.  (Id.).  Ms. Williams testified that plaintiff has been up until 2:00 or 3:00 a.m. in the winter.  (Id.).  Ms. Williams stated that plaintiff's psychiatrist has prescribed Clonidine to help him sleep, which helped for a while but eventually stopped working.  (Tr. 53).

Ms. Williams testified that plaintiff was held back in kindergarten.  (Id.).  Ms. Williams stated that she believes plaintiff has difficulty reading because he reads books intended for younger children.  (Id.).

Ms. Williams testified that plaintiff's writing is sometimes not legible because plaintiff has arthritis in his right ring finger.  (Id.).  Ms. Williams stated that plaintiff's right ring finger was almost amputated when he was five years old.  (Id.).

Ms. Williams testified that plaintiff is having difficulty with fractions in Math class.  (Id.).

Ms. Williams stated that she has to simplify instructions for plaintiff as if he were four or five years old.  (Tr. 54).  Ms. Williams testified that it takes plaintiff longer to complete his homework compared to other kids his age.  (Id.).

Ms. Williams stated that plaintiff has difficulty taking turns. (Id.). Ms. Williams testified that plaintiff gets in trouble at home for not taking turns with his siblings once or twice a week. (Id.).

Ms. Williams stated that plaintiff got in trouble at school for fighting the previous school year. (Id.). Ms. Williams testified that plaintiff has never been kicked out of school, although he had been kicked off the bus. (Tr. 55). Ms. Williams stated that plaintiff has problems with self-control. (Id.).

Ms. Williams testified that plaintiff remembers to bathe on his own, but she has to remind him to brush his teeth and brush his hair. (Id.).

Ms. Williams stated that plaintiff is impulsive and that he often acts without thinking. (Id.).

Ms. Williams testified that, if plaintiff is frustrated or irritable, he goes to his room and listens to music. (Tr. 56). Ms. Williams stated that this occurs three to four times a week. (Id.). Ms. Williams testified that plaintiff is usually in his room for thirty minutes to one hour. (Id.). Ms. Williams stated that plaintiff comes home agitated when he is criticized at school, and that he is sometimes argumentative when he gets in trouble at home. (Id.).

**B.    Relevant Medical Records**

Plaintiff presented to Julia Knapp, FNP, on June 6, 2007, at which time he requested medication refills and a referral for counseling. (Tr. 194). Plaintiff reported that he was angry at his brother. (Id.). Plaintiff's mother indicated that plaintiff was touched inappropriately by his brother and that she wanted to get him counseling for his anger. (Id.). It was noted that plaintiff

- 8 -

had a history of ADHD.  (Id.).  Plaintiff was described as pleasant on examination.  (Id.).  Ms. Knapp diagnosed plaintiff with ADHD, and prescribed Concerta.  (Id.).  In July 2007, Ms. Knapp continued plaintiff's Concerta.  (Tr. 193).

Plaintiff presented to Kaleem Syed, M.D. at Pathways on April 21, 2008, for a psychiatric evaluation.  (Tr. 216).  Plaintiff's mother reported that plaintiff was getting Concerta from his primary care provider, and that she wanted him to see a psychiatrist.  (Id.).  Plaintiff's mother reported that plaintiff was doing well with his Concerta, but he was very hyper, mouthy, fidgety, restless, and unable to focus without medication.  (Id.).  Plaintiff was still "somewhat fidgety" with medication, but very much manageable.  (Id.).  Plaintiff ate and slept fine.  (Id.).  Plaintiff reported that he likes school, and has been doing well.  (Id.).  Plaintiff's grades were getting better.  (Id.).  Dr. Syed noted that a class teacher reported some anger issues at school, although plaintiff's mother was unaware of any anger issues.  (Id.).  Plaintiff's mother did report that plaintiff argues with her on a regular basis.  (Id.).  Upon mental status examination, plaintiff was appropriately dressed and groomed; alert and oriented; maintained good eye contact; was pleasant; had normal speech; goal directed thought process; and average insight, judgment, and intelligence.  (Tr. 217).  Dr. Syed diagnosed plaintiff with ADHD, rule out oppositional defiant disorder ("ODD"),[5] and assessed a GAF score of 45.[6]  (Id.).  Dr. Syed continued the Concerta.

---

[5]A disorder of childhood or adolescence characterized by a recurrent pattern of negativistic, hostile, and disobedient behavior toward authority figures.  Stedman's Medical Dictionary, 570 (28th Ed. 2006).

[6]A GAF score of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th Ed. 1994).

(Id.).

On May 5, 2008, plaintiff presented to Dr. Syed for follow-up, at which time plaintiff's mother reported that he had been better than before. (Tr. 214).  Plaintiff indicated that he was doing fine and was not getting in trouble.  (Id.).  Plaintiff was doing very well academically.  (Id.).  Dr. Syed continued plaintiff's Concerta.  (Id.).  On June 30, 2008, plaintiff's mother reported that plaintiff has days when he is oppositional and angry, although most days he is fine.  (Tr. 212).  Upon examination, plaintiff's mood was happy, his affect was pleasant, and his insight and judgment were intact.  (Id.).  Dr. Syed continued plaintiff's Concerta.  (Id.).  On August 25, 2008, plaintiff's mother reported that plaintiff was doing well at home and at school.  (Tr. 209).  Plaintiff was sleeping and eating fine, tolerating medications well, and had not been arguing with his mother or anyone else.  (Id.).  Dr. Syed assessed a GAF score of 55,[7] and continued plaintiff's Concerta.  (Id.).

In an assessment completed by Pathways dated September 24, 2008, it was noted that plaintiff has difficulty with impulse control, but this had improved.  (Tr. 219).  Plaintiff had problems with anger outbursts with his mother and with his peers at school and on the bus.  (Id.).  Plaintiff's mother reported that these symptoms were less severe at that time, and occurred two to three times a week.  (Id.).  Plaintiff exhibited moderate symptoms of inattention/hyperactivity/impulsivity, including failing to finish tasks, difficulty organizing tasks, being easily distracted and forgetful, and squirming.  (Id.).  Upon mental status examination,

_____

[7]A GAF score of 51-60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV at 32.

plaintiff was excessively fidgety; his speech was pressured and rapid; his mood, affect, and impulse control were within normal limits; and his thought content was within normal limits. 220). It was noted that plaintiff had frequent episodes of anger with verbal aggression and threats of physical aggression. (Tr. 227). Plaintiff was unable to do well in school or sleep well without medication for ADHD. (Id.). Plaintiff was unable to sequence events and must be instructed multiple times or in sequential manner to accomplish tasks. (Id.). Plaintiff exhibited "classic" symptoms of ADHD. (Id.).

Plaintiff presented to Ms. Knapp on October 6, 2008, at which time plaintiff's mother reported that plaintiff was only having problems at 5:00 p.m., when he starts getting "a little hyper." (Tr. 191). Upon examination, plaintiff was described as pleasant. (Id.). Ms. Knapp's assessment was ADHD. (Id.). She continued plaintiff's Concerta. (Id.).

Plaintiff presented to Ms. Knapp on March 25, 2009, with complaints of difficulty initiating sleep. (Tr. 188). Plaintiff's mother indicated that plaintiff's teacher reported that plaintiff was having trouble staying focused in class and was "wired." (Id.). Ms. Knapp's assessment was insomnia and ADHD. (Id.). Ms. Knapp prescribed Clonidine.[8] (Id.).

Plaintiff presented to Ms. Knapp for follow-up on August 10, 2009, at which time plaintiff reported that he was not eating as much, and was having some mood swings. (Tr. 203). Plaintiff was withdrawn on some days, had an attitude on some days, and sometimes had a fighting mood. (Id.). Plaintiff was having difficulty sleeping, and was not going to sleep until 4:00 or 5:00 a.m. (Id.). Plaintiff had not been taking the Clonidine and did not really have a routine. (Id.). Ms.

---

[8]Clonidine is indicated for the treatment of hypertension and ADHD. See PDR at 843.

Knapp's assessment was ADHD and insomnia.  (Id.).

Plaintiff presented to Dee Moore, MSW, LCSW, on October 7, 2009.  (Tr. 245).

Plaintiff's appearance was described as disheveled; his attitude was cooperative and pleasant; his

affect was appropriate; he was fidgety; his mood was euthymic and happy; his speech was normal;

and his thought process was organized.  (Id.).  Plaintiff reported symptoms of restlessness,

irritability, inability to sleep, losing his temper, arguing with adults, and defiance.  (Id.).  Plaintiff

reported the same symptoms on October 20, 2009.  (Tr. 244).  Upon mental status examination,

Ms. Moore noted that plaintiff was disheveled, cooperative, appropriate, spontaneous, fidgety,

anxious, and distracted.  (Id.).  Ms. Moore also noted that plaintiff was abusive to his four-year-

old brother with special needs.  (Id.).

Stanley Hutson, Ph.D. completed a Childhood Disability Evaluation Form on October 12,

2009, in which he expressed the opinion that plaintiff's ADHD was severe, but did not meet,

medically equal, or functionally equal the listings.  (Tr. 229).  Dr. Hutson found that plaintiff had

less than marked limitation in the domains of Acquiring and Using Information, Attending and

Completing Tasks, Interacting and Relating With Others, and Caring For Yourself; and no

limitation in the domains of Moving About and Manipulating Objects, and Health and Physical

Well-Being.  (Tr. 231).

On November 25, 2009, Ms. Moore noted that plaintiff was disheveled, cooperative,

pleasant, appropriate, and euthymic.  (Tr. 243).  Plaintiff had completed anger management and

worked on other coping skills.  (Id.).  Plaintiff was sleeping better and was not having trouble at

school.  (Id.).

Plaintiff presented to Zoobia Mirza, D.O., at Burrell Behavioral Health on December 11, 2009, for a psychiatric evaluation upon the referral of his family physician.  (Tr. 265-70). Plaintiff's chief complaints were listed as ADHD and anger problems.  (Tr. 265).  Plaintiff continued to have problems with fidgetiness, hyperactivity, and difficulty focusing in school. (Id.).  Plaintiff had difficulty organizing tasks and paying attention.  (Tr. 266).  Plaintiff was easily distracted and forgetful in daily activities.  (Id.).  Plaintiff's mother reported that these behaviors had gradually worsened for the last eight months or so.  (Id.).  Plaintiff was also having problems with temper and arguing with adults.  (Id.).  Plaintiff was in a fight at school a few months prior and was aggressive towards another boy.  (Id.).  Plaintiff also reported difficulty falling asleep. (Id.).  Upon mental status examination, plaintiff described his mood as "happy," and he was euthymic; he had increased psycho motor activity, getting up from the chair walking around the room, and constantly playing a video game on his mother's phone; his speech was normal rate and volume; he made good eye contact; his thought processes were goal directed; no formal thought disorder was noted; and his intelligence, insight, and judgment were average.  (Tr. 269).  Dr. Mirza diagnosed plaintiff with ADHD and ODD, with a GAF score of 50.  (Tr. 269-70).  Dr. Mirza discontinued the Concerta and started plaintiff on Vyvanse for his ADHD; and he recommended Melatonin[9] for plaintiff's insomnia.  (Tr. 270).

Plaintiff saw Ms. Moore on December 18, 2009, at which time he reported restlessness. (Tr. 242).  Ms. Moore indicated that plaintiff was disheveled, cooperative, appropriate, agitated, had a euthymic mood, pressured speech, and exhibited rapid thoughts.  (Id.).  On February 2,

_____

[9]Melatonin B vitamin supplement can be used to enhance the natural sleep process.  See PDR at 3190.

- 13 -

2010, plaintiff reported restlessness.  (Tr. 241).  Ms. Moore noted that plaintiff was disheveled, cooperative, appropriate, restless, and his mood was euthymic and happy.  (Id.).  It was noted that plaintiff was staying was relatives and that plaintiff was caught with his pants unzipped with his six-year-old cousin.  (Id.).  Ms. Moore indicated that this incident was "hotlined."  (Id.).

Plaintiff saw a psychiatrist at Burrell Behavioral Health on February 4, 2010, at which time plaintiff's mother reported that plaintiff was doing better but there was still room for improvement.  (Tr. 263).  Plaintiff was doing his homework but forgets to turn it in, and plaintiff's teachers report that he is still fidgety.  (Id.).  Plaintiff's sleep was good with his medication.  (Id.). Upon examination, plaintiff was alert, cooperative, his mood was good, and his affect was euthymic.  (Id.).  Plaintiff's dosage of Vyvanse was increased.  (Id.).

On February 16, 2010, plaintiff reported being less irritable and sleeping well.  (Tr. 240). Ms. Moore noted that plaintiff was poorly groomed, cooperative, appropriate, spontaneous, fidgety, and happy.  (Id.).  Ms. Moore stated that plaintiff was still staying with relatives, and that his medications were working better.  (Id.).  Plaintiff's concentration was better at school, and his sleep was better.  (Id.).

Plaintiff presented to a counselor at White Oak Counseling for an Adolescent Assessment on April 26, 2010.  (Tr. 279-81).  It was noted that plaintiff was going through puberty, and had fondled himself at school.  (Tr. 279).  Plaintiff was irritable, anxious, and angry.  (Id.).  The counselor noted that plaintiff had pent up anger for the past two years, and that he did not talk to his parents about his anger problems.  (Tr. 280).  Plaintiff was diagnosed with conduct disorder[10]-

_____

[10]A mental disorder of childhood or adolescence characterized by a persistent pattern of violating societal norms and the rights of others; children with the disorder may exhibit physical

adolescent-onset type.  (Tr. 281).

Plaintiff presented to White Oaks Counseling on May 12, 2010, at which time it was noted that plaintiff had been suspended from school for masturbating on the school bus.  (Tr. 282). Plaintiff reported that he was acting out to get attention from his parents.  (Id.).  Plaintiff also indicated that he was worried about his parents' financial situation.  (Id.).  Plaintiff's parents acknowledged that their younger children received more attention at home than plaintiff.  (Id.).

Plaintiff presented to a psychiatrist at Burrell Behavioral Health on July 9, 2010, at which time it was noted that plaintiff was not taking Vyvanse during the summer, although he does need medication when he is in school.  (Tr. 261).  Plaintiff had difficulty falling asleep.  (Id.).  Plaintiff reported that the Clonidine stopped working after two years, and the Melatonin stopped working. (Id.).  Plaintiff's grades went up when his sleep was good.  (Id.).  Plaintiff gets irritable at people and has to cool off, although plaintiff was not oppositional very often.  (Id.).  Plaintiff had received only one in-school suspension for fighting with a peer who "kept bugging him for a long time."  (Id.).  Plaintiff had a good response to his medication, with no side effects.  (Id.).  Upon mental status examination, plaintiff was calm and relaxed, with no abnormal psychomotor movements, and his mood was "good' with euthymic affect.  (Id.).

Plaintiff presented to Ms. Moore on August 24, 2010, at which time Ms. Moore indicated that plaintiff was poorly groomed, had body odor ("reeked!"), his clothes and hair were "bad," he was cooperative, fidgety, appropriate, and had a euthymic and guilty mood.  (Tr. 293).  Ms. Moore noted that plaintiff had been masturbating at home and at school.  (Id.).

---

aggression, cruelty to animals, vandalism, robbery, truancy, cheating, and lying.  Stedman's at 568.

- 15 -

Plaintiff presented to Ms. Moore on November 4, 2010, at which time plaintiff was anxious.  (Tr. 311).  Ms. Moore noted that plaintiff's hygiene was better, he was guarded, his affect was labile, his mood was quiet, illogical thoughts, poor impulse control, and harmful judgment.  (Id.).  Ms. Moore noted that plaintiff had been kicked out of school for masturbating in science class.  (Id.).  Plaintiff reported no prior sexual abuse.  (Id.).

## C.    Relevant School Records

The record reveals that plaintiff underwent MAP testing in March 2009, and performed at "basic" level in Science and Communication Arts, and "below basic" level in Mathematics.  (Tr. 296-97).

June Long completed a Teacher Questionnaire on August 11, 2009.  (Tr. 169-76).  Ms. Long indicated that she saw plaintiff two hours per school day for the subjects of Reading, Language, and Spelling, during the 2008-2009 school year.  (Tr. 169).  Ms. Long noted that plaintiff did not receive special education services.  (Id.).  In the domain of Acquiring and Using Information, Ms. Long found that plaintiff had an "obvious problem" in the area of comprehending and doing math problems, and a "slight problem" in the areas of understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions.  (Tr. 170).  Ms. Long stated that, when plaintiff tried, he was capable of most classroom work, and that his attitude toward his school work varied from interested to disinterested.  (Id.).  In the domain Attending and Completing Tasks, Ms. Long found that plaintiff had an obvious problem in the

areas of focusing long enough to finish assigned activity or task, organizing own things or school materials, completing class/homework assignments, and completing work accurately without careless mistakes; and a slight problem in the areas of paying attention when spoken to directly, refocusing to task when necessary, carrying out multi-step instructions, working without distracting self or others, and working at reasonable pace/finishing on time. (Tr. 171). Ms. Long stated that when plaintiff was given his medication regularly by his parents, he attended much better. (Id.). In the domain of Interacting and Relating With Others, Ms. Long found that plaintiff had a slight problem in the areas of playing cooperatively with other children, making and keeping friends, expressing anger appropriately, and following rules. (Tr. 172). Ms. Long indicated that it had not been necessary to implement behavior modification strategies for plaintiff. (Id.). Ms. Long found that plaintiff had no problems in the domain of Moving About and Manipulating Objects. (Tr. 173). With regard to the domain Caring For Himself, Ms. Long found that plaintiff had an obvious problem in the areas of taking care of personal hygiene and caring for physical needs (e.g., dressing, eating); and a slight problem in the areas of handling frustration appropriately, being patient when necessary, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help. (Tr. 174). Finally, Ms. Long indicated that plaintiff's functioning changed after taking medication, but plaintiff's parents did not give him his medication consistently. (Tr. 175).

Plaintiff received a one day in-school suspension ("ISS") on September 18, 2009, for starting a fight. (Tr. 248). Plaintiff reported that the other student kept touching him and he asked him to stop but he would not. (Id.).

On October 8, 2009, plaintiff received an after-school detention for being tardy to class on eleven occasions that school year.  (Id.).  On November 2, 2009, plaintiff received an after-school detention for being tardy to class on sixteen occasions that school year.  (Id.).  Plaintiff received another after-school detention on November 3, 2009, for tardiness.  (Tr. 249).

On November 5, 2009, plaintiff received a one-hour in-school suspension for inappropriate behavior.  (Id.).  Plaintiff hit another student in the leg.  (Id.).

Plaintiff's sixth grade report card for the term ending January 15, 2010 revealed the following grades: one "A", two "A-," one "B," one "B-," one "C+," and three "D-."  (Tr. 238).

On January 22, 2010, it was noted that plaintiff would receive an ISS and a Saturday detention for twenty-four tardies for the first semester.  (Id.).

On January 26, 2010, plaintiff lost his computer rights for two weeks after viewing inappropriate images on the computer.  (Id.).

On March 1, 2010, it was noted that plaintiff would receive two days of ISS after failing to serve a Saturday detention.  (Id.).

Plaintiff's report card for the period ending March 3, 2010, revealed the following grades: three "A-," one "B," one "B-," one "C+," one "C," and one "F."  (Tr. 289).  Plaintiff's "F" was received in Math.  (Id.).

On March 8, 2010, plaintiff received an ISS for fighting in the restroom with another student.  (Tr. 286).

On April 22, 2010, it was noted that plaintiff had been caught with his hand in his pocket fondling himself in class on three different occasions that week.  (Id.).  The teacher spoke to

- 18 -

plaintiff's mother and it was recommended that plaintiff talk with a counselor.  (Id.).  Plaintiff

received an out-of-school suspension.  (Id.).  On May 3, 2010, plaintiff was touching himself

inappropriately during an assembly.  (Id.).  Plaintiff touched himself inappropriately during class

on May 10, 2010.  (Id.).  Plaintiff received an out-of-school suspension.  (Id.).  On the same date,

plaintiff was caught on film masturbating on the school bus.  (Id.).  Plaintiff was not permitted to

ride the school bus for the rest of the school year, and he was required to attend counseling before

he could return to school.  (Id.).

   For the period ending May 28, 2010, plaintiff earned one "A," one "B," four "C"s, and

two "D"s.  (Tr. 291).

   For the period ending October 3, 2010, plaintiff received one "A," one "A-," one "B+,"

two "B"s, one "C+," one "D+," and one "D."  (Tr. 308).

### The ALJ's Determination

   The ALJ made the following findings:

1.  The claimant was born on July 16, 1997.  Therefore, he was a school-age child on July 6, 2009, the date the application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2.  The claimant has not engaged in substantial gainful activity since July 6, 2009, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3.  The claimant has the following severe impairments: Attention Deficit Hyperactivity Disorder (ADHD) and Oppositional Defiance Disorder (ODD) (20 CFR 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.  The claimant does not have an impairment or combination of impairments that

- 19 -

functionally equals the listings (20 CFR 416.924(d) and 416.926a).

6.      The claimant has not been disabled, as defined in the Social Security Act, since July 6, 2009, the date the application was filed (20 CFR 416.924(a)).

(Tr. 13-25).

The ALJ's final decision reads as follows:

Based on the application for supplemental security income protectively filed on July 6, 2009, the claimant is not disabled under section 1614(a)(3)(C) of the Social Security Act.

(Tr. 25).


## Discussion

### A.      Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).  The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).  "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing

- 20 -

test to evidence which is contrary." <u>Burress v. Apfel</u>, 141 F.3d 875, 878 (8th Cir. 1998).  The

analysis required has been described as a "searching inquiry."  <u>Id.</u>

**B.      The Determination of Disability**

A child is considered disabled if that child "has a medically determinable physical or mental

impairment, which results in marked and severe functional limitations" and which lasts for a

period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(C)(i),(ii).  The Commissioner has

established a three-step process for determining whether a child is disabled under the Social

Security Act.  <u>See</u>  20 C.F.R. § 416.924.  Under the first step, it is determined whether the child

was engaged in substantial gainful activity.  If substantial gainful activity is being performed, then

a finding of no disability is warranted.  <u>See</u> 20 C.F.R. §§ 416.924(b).  Next, it is determined

whether the child's impairments are severe.  <u>See</u> 20 C.F.R. §§ 416.924(c).  If a severe impairment

is found, the next issue is whether the child's impairment meets or medically equals a listed

impairment found in Appendix One to 20 C.F.R. 404.  <u>See</u> 20 C.F.R. §§ 416.924(d); 20 C.F.R.

pt. 404, subpt. P, App. 1.  If it is determined that the impairment does not meet or medically equal

a listing, then the final consideration is whether the child's impairment "functionally equals" a

listed impairment.  <u>See</u> 20 C.F.R. § 416.924(d).

An ALJ is to evaluate, in determining functional equivalence, a child's functional

limitations in: (1) acquiring and using information, (2) attending and completing tasks, (3)

interacting and relating with others, (4) moving about and manipulating objects, (5) caring for

himself/herself, and (6) health and physical well-being.  <u>See</u> 20 C.F.R. § 416.926a (b)(1)(i)-(vi).

A medically determinable impairment or combination of impairments functionally equals a listed

- 21 -

impairment if it results in "marked" limitations in two domains or an "extreme" limitation in one domain.  See 20 C.F.R. § 416.926a(d).

A "marked" limitation is a limitation which is "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a (e)(2)(i).  A "marked" limitation can also be "equivalent to standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  Id.

An "extreme" limitation is "more than marked," and is given "to the worst limitations," although it need not necessarily mean a total lack or loss of ability to function.  20 CF.R. § 416.926a(e)(3)(i).

## C.    Plaintiff's Claims on Appeal

Plaintiff argues that the ALJ erred in finding that plaintiff had less than marked limitation in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating With Others, and Caring For Yourself.  The undersigned will discuss the ALJ's findings with regard to each of these domains.

## 1.    Acquiring and Using Information

In the domain of "Acquiring and Using Information," the ALJ considers how well a child acquires, learns, and uses information.  20 C.F.R. § 416.926a(g).  A school age child (i.e., a child age six to the attainment of age twelve) should be able to learn to read, write, do math, and discuss history and science, to demonstrate what he has learned in an academic setting through test taking, group work, and class discussions, to use these skills in daily living situations, to share information and ideas with individuals and in groups by asking questions and expressing his own

ideas, and by understanding and responding to the opinions of others.  20 C.F.R. §
416.926a(g)(2)(iv).

   An adolescent (i.e., a child age twelve to the attainment of eighteen) should continue to
demonstrate what he has learned in academic assignments (e.g., composition, classroom
discussion, and laboratory experiments); use what he has learned in daily living situations without
assistance (e.g., going to the store, using the library and using public transportation); comprehend
and express both simple and complex ideas, using increasingly complex language in learning and
daily living situations; and learn to apply these skills in practical ways that will help him enter the
workplace after he finishes high school (e.g., carrying out instructions, preparing a job
application, or being interviewed by a potential employer).  20 CFR § 416.926a(g)(2)(v).

   Examples of limited functioning in Acquiring and Using Information include situations
where the claimant: (i) cannot understand words about space, size, or time; (ii) cannot rhyme
words or sounds; (iii) has difficulty recalling important things he learned in school the previous
day; (iv) has difficulty solving math questions or doing arithmetic; or (v) is unable to talk in short,
simple sentences, and has difficulty explaining what he means.  20 C.F.R. § 416.926a(g)(3)(i)-(v).

   The ALJ found that plaintiff has less than marked limitation in Acquiring and Using
Information.  (Tr. 23).  The ALJ noted that plaintiff's teacher, Ms. Long, indicated that plaintiff
had no problems to slight problems in all areas in this domain except comprehending and doing
math problems, in which he had an "obvious" problem.  (Tr. 19, 170).  Ms. Long stated that,
when plaintiff tried, he was capable of most classroom work, and that his attitude toward his
school work varied from interested to disinterested.  (Id.).  The ALJ also discussed plaintiff's

grades, and noted that he had earned some low grades but, by March 2010, his grades had

improved in all areas except Math.  (Tr. 19, 238, 289).  Finally, the ALJ noted that plaintiff did

not receive special education services.  (Tr. 19).

The undersigned finds that the ALJ's determination that plaintiff has less than marked

limitation in the domain of Acquiring and Using Information is supported by substantial evidence.

As the ALJ pointed out, plaintiff did not receive special education services.  (Tr. 295).  Plaintiff's

school record, including plaintiff's report cards as well as the opinion of Ms. Long, reveal that

plaintiff had some difficulty in Math.  In March 2010, plaintiff received an "F" in Math and

received As, Bs, and Cs in all other subjects.  (Tr. 289).  In May 2010, however, plaintiff received

a "C" in Math.  (Tr. 291).  In October 2010, plaintiff received a "D+" in Math.  (Tr. 308).  While

Ms. Long indicated that plaintiff had an "obvious" problem in comprehending and doing math

problems, she did not find that plaintiff had a "serious problem," or "very serious problem."  (Tr.

170).  In sum, while plaintiff received some low grades and appeared to have difficulty in Math,

the record as a whole supports the ALJ's finding that plaintiff had less than marked limitation in

this domain.

**2.     Attending and Completing Tasks**

"When considering the attending and completing tasks domain, the inquiry focuses on how

well the child is able to focus and maintain his or her attention and how well the child begins,

carries through, and finishes activities."  England v. Astrue, 490 F.3d 1017, 1022 (8th Cir. 2007)

(citing 20 C.F.R. § 416.926a(h)).  A school-age child should be able to focus his attention in a

variety of situations, concentrate on details, change activities or routines without distracting

- 24 -

himself or others, stay on task, and complete a transition task without extra reminders and accommodation.  20 C.F.R. § 416.926a(h)(2)(iv) (A school-age child should also be able to follow directions, remember and organize school materials, complete assignments, and sustain attention well enough to participate in group sports, read independently, and complete family chores).  See also Social Security Ruling 09–4p, 2009 WL 396033 (Feb. 18, 2009) (The inquiry also includes consideration of the child's alertness and ability to focus on an activity or task despite distractions, to perform tasks at an appropriate pace, to change focus after completing a task, and to avoid impulsive thinking and acting).

An adolescent should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects; organize his materials and plan his time in order to complete school tasks and assignments; and maintain his attention on a task for extended periods of time and not be unduly distracted by his peers or unduly distracting to them in a school or work setting.  20 C.F.R. § 416.926a(h)(2)(v).

Examples of limited functioning in Attending and Completing Tasks include situations where the claimant: (i) is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fail to complete activities of interest to you; (iii) repeatedly becomes sidetracked from his activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to keep him engaged in an activity.  20 C.F.R. § 416.926a(h)(3)(i)-(v).

The ALJ found that plaintiff has less than marked limitation in the domain of Attending

and Completing Tasks.  (Tr. 20).  As support for this finding, the ALJ cited Ms. Long's opinion

that plaintiff had an "obvious" problem in only the following areas: focusing long enough to finish

assigned activity or task; organizing own things or school materials; completing class/homework

assignments; and completing work accurately without careless mistakes.  (Tr. 20, 171).  The ALJ

pointed out that Ms. Long stated that plaintiff "attended much better" when given his medication.

(Id.).  The ALJ stated that the rest of the record supported the finding that plaintiff's limitations

were not as severe or marked when he took his medication.  (Tr. 20).  The ALJ pointed to the

note from a September 2008 assessment at Pathways that plaintiff was unable to do well in school

or sleep well *without medication* for ADHD.  (Tr. 20, 227) (emphasis added).  It was also noted

that plaintiff's impulse control was improved, and that plaintiff's mother reported that plaintiff

experienced symptoms two to three times a week.  (Tr. 20, 219).  The ALJ noted that plaintiff's

mother reported in October 2008 that plaintiff was only having problems around 5:00 p.m. at

which time he would get a "little hyper."  (Tr. 21, 191).  The ALJ stated that plaintiff was

experiencing some mood swings in August 2009, but it was noted that plaintiff had not been given

one of his medications.  (Tr. 21, 203).  The ALJ stated that, by November 2009, plaintiff was

sleeping better and was having no trouble at school.  (Tr. 21, 243).  The ALJ noted that records

from February 2010 reveal that plaintiff's behavior was improving and his medication was

working, and records from March 2010 reveal that plaintiff's grades had improved.  (Tr. 21, 263,

240, 289).

    The undersigned finds that the ALJ's determination is not supported by substantial

evidence.  Although the ALJ relied in part on the opinion of Ms. Long, Ms. Long's opinion is not

entirely consistent with the ALJ's determination.  First, Ms. Long found that plaintiff had an "obvious" problem in four areas of this domain, which is significant.  Ms. Long did note that plaintiff attended much better when he was given his medication, although it is unclear whether she believed plaintiff would still have "obvious" problems in the areas listed if he were medicated. Most significantly, however, is the fact that Ms. Long rendered her opinion in August 2009, over one year prior to the administrative hearing.  As will be discussed further below, plaintiff began experiencing significant behavioral problems after this time.

The ALJ's findings that plaintiff's condition was only severe without medication, and that his condition improved by February 2010, are not supported by the record.  In March 2009, plaintiff complained of difficulty sleeping and plaintiff's mother indicated that plaintiff was having difficulty staying focused in class and was "wired."  (Tr. 188).  In October 2009, Ms. Moore described plaintiff's motor activity as "fidgety."  (Tr. 245).  Plaintiff reported symptoms of restlessness, irritability, inability to sleep, losing his temper, arguing with adults, and defiance. (Id.).  Plaintiff reported the same symptoms on October 20, 2009.  (Tr. 244).  Upon mental status examination, Ms. Moore noted that plaintiff was disheveled, cooperative, appropriate, spontaneous, fidgety, anxious, and distracted.  (Id.).  Plaintiff saw Dr. Mirza in December 2009, at which time plaintiff was having problems with fidgetiness, hyperactivity, difficulty focusing in school, difficulty organizing tasks and paying attention, and was easily distracted and forgetful in daily activities.  (Tr. 265-66).  Plaintiff had been involved in a fight at school a few months prior. (Tr. 266).  Upon examination, Dr. Mirza noted increased psycho motor activity, getting up from the chair, walking around the room, and constantly playing a vide game on his mother's phone. (Tr. 269).  Dr. Mirza diagnosed plaintiff with ADHD and ODD, and assessed a GAF score of 50.

(Tr. 269-70).  In December 2009, plaintiff reported restlessness, and Ms. Moore indicated that plaintiff was agitated, had pressured speech, and exhibited rapid thoughts.  (Tr. 242).  On February 2, 2010, plaintiff reported restlessness.  (Tr. 241).  Ms. Moore noted that plaintiff was caught with his pants unzipped with his six-year-old cousin and that the incident was "hotlined." (Id.).  From September 2009 through January 2010, plaintiff received in-school suspensions for starting a fight with another student, inappropriate behavior involving hitting another student in the leg, and for excessive tardies.  (Tr. 248-49).  On January 26, 2010, plaintiff lost his computer rights for two weeks after viewing inappropriate images on the school computer.  (Tr. 249).  The ALJ did not discuss this evidence, which reveals that plaintiff continued to experience significant symptoms, even when he was compliant with his medication.  The record also does not support the ALJ's finding that plaintiff's condition improved in February 2010.

Further, the evidence reveals that plaintiff began experiencing increased symptoms and behavioral problems at school beginning in April 2010.  On April 22, 2010, school records indicate that plaintiff had been caught fondling himself in class on three different occasions.  (Tr. 286).  It was recommended that plaintiff undergo counseling.  (Id.).  Plaintiff presented to White Oaks Counseling on April 26, 2010, at which time plaintiff was irritable, anxious, and angry.  (Tr. 279).  Plaintiff was diagnosed with conduct disorder-adolescent-onset type.  (Tr. 281).  School records indicate that plaintiff touched himself inappropriately during an assembly on May 3, 2010; touched himself inappropriately in class on May 10, 2010; and was caught masturbating on the school bus on May 10, 2010.  (Tr. 286).  Plaintiff presented to White Oaks Counseling on May 12, 2010, at which time it was noted that plaintiff had been suspended for masturbating on the school bus, and that plaintiff reported that he was acting out to get attention from his parents.

(Tr. 282). In August 2010, Ms. Moore indicated that plaintiff was poorly groomed, had body odor, his clothes and hair were "bad," he was fidgety, and had a guilty mood. (Tr. 293). Ms. Moore also noted that plaintiff had been masturbating at home and at school. (Id.). In November 2010, plaintiff was anxious, guarded, his affect was labile, his mood was quiet, he had illogical thoughts, poor impulse control, and harmful judgment. (Tr. 311). Ms. Moore noted that plaintiff had been kicked out of school for masturbating in science class. (Id.). The ALJ did not address any of this newer evidence, specifically the evidence of plaintiff's inappropriate sexual behavior, when discussing plaintiff's limitation in the domain of Attending and Completing Tasks.

In sum, the ALJ's determination that plaintiff had less than marked limitation in the domain of Attending and Completing Tasks is not supported by substantial evidence. Ms. Long's opinion was provided in August 2009, and therefore did not consider plaintiff's increased problems beginning in 2010. Further, while there is some evidence that plaintiff's condition improved when he was taking his medication, the record reveals that he continued to experience symptoms even when compliant with medication. The ALJ did not discuss the newer evidence regarding plaintiff's sexually inappropriate behavior, which demonstrates plaintiff continued to experience significant problems with impulse control.

**3.      Interacting and Relating With Others**

In the domain of Interacting and Relating With Others, the Commissioner considers how well a child initiates and sustains emotional connections with others, develops and uses the language of the child's community, cooperates with others, complies with rules, and responds to criticism. 20 C.F.R. § 416.926a(i).

A school-age child should be able to develop more lasting friendships with children who

- 29 -

are his age; begin to understand how to work in groups to create projects and solve problems; have an increasing ability to understand another's point of view and to tolerate differences; and should be well able to talk to people of all ages, share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv). An adolescent child should be able to initiate and develop friendships with children who are his age and relate appropriately to other children and adults, both individually and in groups; begin to be able to solve conflicts between himself and peers or family members or adults outside his family; recognize that there are different social rules for the child and his friends and for acquaintances or adults; intelligibly express his feelings, ask for assistance in getting his needs met, seek information, describe events, and tell stories, in all kinds of environments, and with all types of people. 20 C.F.R. § 416.926a(i)(2)(v).

Examples of limited functioning in Interacting and Relating With Others include situations where the claimant: (i) does not reach out to be picked up and held by his caregiver; (ii) has no close friends, or his friends are all older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others; e.g., in using verbal and nonverbal skills to express himself, carrying on a conversation, or in asking others for assistance; or (vi) has difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(h)(3)(i)-(vi).

The ALJ found that plaintiff has less than marked limitation in Interacting and Relating With Others. (Tr. 22). In support of this finding, the ALJ cited the opinion of Ms. Long that plaintiff had only slight problems in some areas of this domain. (Tr. 22, 172). The ALJ

acknowledged that plaintiff reported symptoms of irritability, being defiant and argumentative

with adults, and losing his temper in October 2009, yet stated that by November 2009, plaintiff

was sleeping better and having no trouble at school.  (Tr. 22, 244-45, 243).  The ALJ stated that

he had factored in plaintiff's school infractions for tardiness, fighting with other students, and

inappropriate behavior between September 2009 and March 2010 in making his determination.

(Tr. 22).  The ALJ stated that records from February 2010 indicate that plaintiff's behavior was

improving and his medication was working.  (Tr. 22, 263, 240).  The ALJ noted that notes from a

July 2010 visit to Burrell Behavioral Health indicate that plaintiff had a good response to

medication with no side effects and had only one in -school suspension for a fight with a peer.

(Tr. 22, 261).  Finally, the ALJ stated that plaintiff had not taken his medication the day of the

hearing, yet he interacted in an appropriate manner.  (Tr. 22).

      The undersigned finds that the ALJ's determination that plaintiff has less than marked

limitation in the domain of Interacting and Relating With Others is not supported by substantial

evidence.  The ALJ did not discuss the significant evidence of sexually inappropriate behavior

resulting in disciplinary problems at school beginning in April 2010.  Plaintiff received an out-of-

school suspension on April 22, 2010, after he has been caught fondling himself in class on three

occasions that week.  (Tr. 286).  Plaintiff saw a counselor at White Oak Counseling at the request

of the school on April 26, 2010, at which time it was noted that plaintiff was irritable, anxious,

and angry.  (Tr. 279).  Plaintiff was diagnosed with conduct disorder.  (Id.).  On May 3, 2010,

plaintiff received an in-school suspension for touching himself during an assembly.  (Tr. 286).  On

May 10, 2010, plaintiff received an out-of-school suspension for touching himself inappropriately

during class.  (Id.).  On the same date, he was kicked off the school bus for the rest of the school

year for masturbating on the bus. (Id.). On May 12, 2010, plaintiff reported to a counselor at White Oaks Counseling that he was acting out to get attention from his parents. (Tr. 282). On August 24, 2010, plaintiff reported to Ms. Moore that he was continuing to masturbate at school. (Tr. 293). Finally, in November 2010, Ms. Moore indicated that plaintiff had been kicked out of school for masturbating in science class. (Tr. 311).

The ALJ erred in failing to discuss this evidence regarding plaintiff's sexually inappropriate behavior and resulting discipline. This evidence is particularly relevant in this domain, as it demonstrates plaintiff's limitations in his ability to follow rules. Further, as the ALJ noted, plaintiff had previously received infractions at school for tardiness, fighting with other students, and other inappropriate behavior between September 2009 and March 2010. Thus, the ALJ's determination that plaintiff has less than marked limitation in the domain of Interacting and Relating With Others is not supported by substantial evidence.

## 4. Caring For Yourself

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. 20 C.F.R. § 416.926a(k). A school-age child should be independent in most day-to-day activities (e.g., dressing himself, bathing himself), although he may still need to be reminded sometimes to do these routinely; should begin to recognize that he is competent in doing some activities and that he has difficulty with others; should be able to identify those circumstances when he feels good about himself and when he feels bad; should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior; should begin to demonstrate consistent control over his behavior, and should be able to avoid behaviors that are

- 32 -

unsafe or otherwise not good for the child.  20 C.F.R. § 416.926a(k)(2)(iv).  An adolescent child

should feel more independent from others and should be increasingly independent in all day-to-day

activities; may sometimes experience confusion in the way he feels about himself; should begin to

notice significant changes in his body's development, and this can result in anxiety or worrying

about himself and his body; sometimes these worries can make him feel angry or frustrated;

should begin to discover appropriate ways to express his feelings, both good and bad; and should

begin to think seriously about his future plans, and what he will do when he finishes school.  20

C.F.R. § 416.926a(k)(2)(v).

Examples of limited functioning in this domain include situations where the claimant: (i)

continues to place non-nutritive or inedible objects in his mouth; (ii) often uses self-soothing

activities showing developmental regression (e.g., thumbsucking, re-chewing food) or has

restrictive or stereotyped mannerisms (e.g., body rocking, headbanging); (iii) does not dress or

bathe himself appropriately for his age because he has an impairment that affects this domain; (iv)

engages in self-injurious behavior; (v) does not spontaneously pursue enjoyable activities or

interests; or (vi) has disturbance in eating or sleeping patterns.  20 C.F.R. § 416.926a(k)(3)(i)-

(vi).

The ALJ found that plaintiff has less than marked limitation in the ability to care for

himself.  (Tr. 24).  In support of this finding, the ALJ cited Ms. Long's opinion that plaintiff had

an "obvious" problem only in the areas of taking care of his personal hygiene and caring for his

physical needs (i.e., dressing, eating).  (Tr. 24, 174).  The ALJ also noted that a record from

plaintiff's August 2010 visit with Ms. Moore indicated that plaintiff was poorly groomed.  (Tr.

24, 293).

- 33 -

The undersigned finds that the ALJ's determination that plaintiff had less than marked limitation in the domain of Caring for Yourself is not supported by substantial evidence. The evidence of record reveals that plaintiff had significant difficulties with maintaining his personal hygiene. As the ALJ acknowledged, Ms. Long found that plaintiff had an "obvious" problem in the areas of taking care of his personal hygiene. (Tr. 24, 174). Ms. Moore also consistently found that plaintiff's appearance was disheveled from October 2009 through February 2010. (Tr. 244, 243, 242, 241). On February 2010, Ms. Moore described plaintiff as poorly groomed. (Tr. 240). Finally, on August 24, 2010, Ms. Moore found that plaintiff was poorly groomed, had body odor ("reeked!"), and his clothes and hair were "bad." (Tr. 293). In addition, as previously discussed, the ALJ did not discuss the significant amount of evidence regarding plaintiff's sexually inappropriate behavior. This evidence is also relevant to the domain of Caring For Yourself.

## Conclusion

In sum, the ALJ erred in failing to consider the significant newer evidence in the record regarding plaintiff's sexually inappropriate behavior and resulting disciplinary problems at school. The only teacher who provided an opinion regarding plaintiff's limitations rendered her opinion over one year prior to the hearing, and prior to plaintiff's sexually inappropriate behavior and other disciplinary problems. None of plaintiff's treating mental health providers provided an opinion regarding plaintiff's limitations. The ALJ also failed to discuss other evidence that reveals plaintiff experiences significant symptomatology even when compliant with his medication. As a result, the ALJ's findings that plaintiff has less than marked limitation in the domains of Attending and Completing Tasks, Interacting and Relating With Others, and Caring For Yourself are not supported by substantial evidence.

- 34 -

For these reasons, this cause will be reversed and remanded to the ALJ in order for the ALJ to consider the newer evidence regarding plaintiff's sexually inappropriate behavior and disciplinary problems at school; obtain additional evidence regarding plaintiff's limitations, if necessary; and re-evaluate plaintiff's limitation in the domains of Attending and Completing Tasks, Interacting and Relating With Others, and Caring for Yourself.  Accordingly, a Judgment of Reversal and Remand will be entered separately in favor of plaintiff in accordance with this Memorandum.

Dated this  25th day of March, 2013.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

- 35 -